Ronnell B. WILLIAMS, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 26694.

Missouri Court of Appeals, Kansas City District.

April 1, 1974.

James M. Reed II, Kansas City, for movant-appellant.

John C. Danforth, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

This is an appeal from an order of the Circuit Court, entered after an evidentiary hearing, overruling movant-appellant's Rule 27.26, V.A.M.R., motion to vacate judgments and sentences imposed upon contemporaneous pleas of guilty to the offenses of raping a nun and robbery in the first degree, with a dangerous and deadly weapon, of a priest. The contemporaneous pleas of guilty were entered on March 17, 1970. The trial court fixed sentence on the rape charge at ninety-nine years and sentence on the robbery charge at forty-five years, both sentences to run concurrently.

Points asserted by movant in his Rule 27.26 motion were an amalgam—alleged procedural and constitutional infirmities antedating the pleas of guilty and alleged ineffective assistance of counsel prior to and at the time the guilty pleas were entered.

█ If the guilty pleas were knowingly and voluntarily made, any and all alleged procedural and constitutional infirmities antedating them were waived by entering the pleas of guilty. Geren v. State, 473 S.

W.2d 704, 707 (Mo.1971); Simpson v. State, 487 S.W.2d 512, 513 (Mo.1972) and Pauley v. State, 487 S.W.2d 565, 566 (Mo. 1972). Therefore, movant's charge of ineffective assistance of counsel impels initial consideration since it may well be dispositive of movant's appeal.

The myriad peculiarities inherent in sundry adversary proceedings between the state and accuseds in criminal cases, especially when viewed with an awareness that the desires and capacities of various accuseds are different and that all are distinct and different personalities in their own right, preclude laying down an absolute objective rule for determining the effectiveness of counsel in a given case. The net result is that the determination must be made in the concrete factual context of each individual case. Such determination is considerably narrowed where the accused has entered a guilty plea, because the issue of ineffective assistance of counsel then becomes concomitant with the issue of whether the guilty plea was knowingly and voluntarily entered. Colson v. Smith, 438 F.2d 1075, 1078 (5th Cir. 1971); and Hulett v. State, 473 S.W.2d 410, 411 (Mo.1971). Once a guilty plea has been entered, the concrete factual context of the particular case must be viewed from the standpoint of determining whether the plea was knowingly and voluntarily made, and all other aspects of the adequacy of counsel's representation become immaterial. Barylski v. State, 473 S.W.2d 399, 402 (Mo.1971); Hulett v. State, supra, 473 S. W.2d at 411; and Lee v. State, 460 S.W.2d 564, 567 (Mo.1970). If a guilty plea has been knowingly and voluntarily made, counsel can not be charged with affording ineffective assistance and the guilty plea must stand. The burden rested upon movant throughout to establish by a preponderance of the evidence that his guilty pleas were not knowingly and voluntarily made because of ineffective assistance of counsel. Rule 27.26(f); Babcock v. State, 485 S.W.2d 85, 89 (Mo.1972); Johnson v. State, 479 S.W.2d 416, 418, 419 (Mo.1972);

and State v. Brown, 449 S.W.2d 664, 666 (Mo.1970).

Appellate review of the trial court's judgment is limited to determining whether the findings, conclusions and judgment of the trial court were clearly erroneous. Rule 27.26(j); Crosswhite v. State, 426 S. W.2d 67, 70 (Mo.1968); Walster v. State, 438 S.W.2d 1, 2 (Mo.1969); Shoemake v. State, 462 S.W.2d 772, 775 (Mo. banc 1971); and Richardson v. State, 470 S.W. 2d 479, 481 (Mo.1971).

Attention must now focus on the predicates alleged by movant as constituting ineffective assistance of counsel, viewed in the concrete factual context of this particular case and measured by the above principles. Movant would have this court believe that the efforts of his court appointed counsel constituted nothing more than a facade because counsel (a) failed to investigate the facts to determine if movant had a legitimate justiciable defense to either or both of the charges, (b) failed to request an examination to determine movant's mental fitness to proceed as provided in Section 552.020, RSMo 1969, as amended Laws 1971, V.A.M.S., and (c) "hinted at the possibility" of reduced sentences in exchange for pleas of guilty.

When movant was originally arraigned on the dual charges, he was represented by a different court appointed counsel. At arraignment, movant pleaded not guilty to both charges. Movant's original court appointed counsel was then permitted to withdraw. During the interim between withdrawal of movant's first court appointed counsel and the appointment of counsel who represented movant at the time he withdrew his pleas of not guilty and entered pleas of guilty to both charges, movant "wrote letters" to the prosecuting attorney confessing the crimes with which he stood charged and advising the prosecuting attorney that he wanted to change his pleas from not guilty to guilty. It is crystal clear that movant himself conceived and initiated the notion of withdrawing his

original pleas of not guilty and entering pleas of guilty. The maximum punishment for both offenses with which movant stood charged was death, and, timewise, Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (June 29, 1972), outlawing the death penalty, was several years away.

The transcript of the proceedings concerning movant's contemporaneous withdrawal of his earlier pleas of not guilty and entry of pleas of guilty to both charged offenses discloses the following according to movant's own sworn testimony. Movant was twenty years of age and had "completed the 10th grade and started the 11th"; he acknowledged that prior to the proceeding in question he had been given tests which disclosed he had a "pretty fair I.Q."; he desired to withdraw his earlier pleas of not guilty and enter pleas of guilty; he was entering pleas of guilty because he was, in fact, guilty of both offenses; he was entering pleas of guilty of his own free will; no "force, threats, or coercion" induced him to withdraw his plea of not guilty and enter pleas of guilty; no "promises of favors, or rewards, or immunity of any kind" had been made by anyone; he understood that the range of punishment on the rape charge was a minimum of two years imprisonment "to death", and on the robbery charge a minimum of five years imprisonment "to death"; he understood that the court was not bound by any recommendations which his counsel or anyone else might make in connection with the fixing of his sentence in each case, but that the matter rested solely in the discretion of the court; he understood that he was entitled to a jury trial, to confront the state's witnesses, to call witnesses on his own behalf, to testify on his own behalf or to remain silent, and that at the hands of a jury he might be acquitted or receive less or more severe punishments than those fixed by the court; no threats, coercion, or force of any kind prompted the voluntary letters of confession he mailed to the prosecuting attorney; he lucidly detailed to the court facts dis-

closing his unmitigated guilt of each charged offense; he had adequate opportunity to consult with counsel prior to pleading guilty, as well as adequate opportunity to consult with his mother, mother-in-law and wife; he was not suffering from any mental disease or defect at the time that he was aware of and he had never been treated for any mental condition or hospitalized for any mental or physical condition; he was fully aware of the nature of the proceeding and his rights; he understood that his court appointed counsel was perfectly willing to go to trial in either case if that was his desire; he was not under the influence of or using drugs or medications of any kind at the time; he was satisfied with the services rendered by counsel; and his pleas of guilty were not being entered on the basis of any promises as to the punishment that might be fixed by the court, but rather on the basis of throwing himself on the mercy of the court.

■ At the evidentiary hearing on his Rule 27.26 motion, movant testified that prior to pleading guilty he consulted with counsel for forty-five minutes to an hour at the most; the referred to consultations occurred on three separate occasions; on the first occasion, he detailed to counsel his participation in the charged offenses; in addition, counsel had copies of the "letters" of confession movant had taken upon himself to mail to the prosecuting attorney. The entire record before this court is void of any evidence, direct or circumstantial, that so much as even suggests that additional investigation by counsel would have uncovered facts upon which to support a defense to either offense, or which would support vindication of movant as to either offense if tried before a jury. Perforce, movant was charged with the burden of so doing in the particulars just mentioned. Jackson v. State, 465 S.W.2d 642, 646 (Mo.1971); and Babcock v. State, supra, 485 S.W.2d at 89. The amount of time that counsel spent in consulting with movant prior to entry of the guilty pleas, standing alone, affords no basis to substan-

tiate movant's charge that counsel was derelict absent a showing that more time would have inured to movant's benefit. Babcock v. State, supra, at 89; State v. Bobbitt, 465 S.W.2d 579, 581 (Mo. banc 1971); and Fry v. State, 504 S.W.2d 250, 251 (Mo.App.1973).

■ Movant's contention that counsel incompetently represented him by failing to request an examination to determine movant's mental fitness to proceed is unsupported by movant's sworn testimony attending entry of his pleas of guilty, heretofore set forth, and, as well, unsupported by his sworn testimony at the evidentiary hearing in connection with his Rule 27.26 motion. With respect to the latter, movant testified: that he understood the charges against him and the nature of the proceedings; the day he pleaded guilty to both charges he knew what he was doing; he did not feel that he was suffering from any mental disease or defect at the time; in his own mind he thought he was mentally alright; he had never been in a mental hospital or examined by a psychiatrist; he was not suffering from drugs or alcohol at the time; and the answers he gave to the questions propounded to him when he pleaded guilty were fully and voluntarily given and he knew and understood what he was doing at the time. Not only does movant's positive sworn testimony fail to raise any suspicion that should have alerted counsel to question movant's mental fitness to proceed, but, additionally, movant failed to adduce even the slightest scintilla of evidence that would have caused counsel to harbor an honest belief that movant lacked mental capacity to proceed. Again, at the risk of being repetitious, this burden fell on movant and he failed to carry it. Rule 27.26(f); Brown v. State, 485 S.W. 2d 424, 428 (Mo.1972); and Franklin v. State, 455 S.W.2d 479, 485 (Mo.1970).

■ Lastly, movant charges that counsel "hinted at the possibility" of reduced sentences in exchange for pleas of guilty. This charge is vitiated by both movant's sworn testimony at the plea proceedings and the evidentiary hearing on his Rule 27.26 motion. Regarding the former, pertinent evidence has heretofore been delineated. Regarding the latter, movant testified that counsel at no time "definitely" advised him as to what punishment the court might assess with regard to the respective offenses if he pleaded guilty, and, although he was "hopeful" of getting less severe sentences than those actually imposed, he realized that the matter rested strictly with the trial court and could run the gamut within the prescribed ranges. All of the aforementioned falls far short of sustaining the burden or proof impressed on movant. Rule 27.26(f).

■ It is patently obvious in this case that neither movant's counsel or the state induced him to plead guilty to the heinous crimes for which he stood charged. The pleas were initiated by movant before counsel in question entered the case and obviously sprang from movant's desire to avoid the death penalty. Movant's self motivation, in the total context of the record before this court, falls far short of legal coercion that would condemn the pleas of guilty as not being freely and voluntarily made. Fleck v. State, 443 S.W.2d 100, 103 (Mo.1969); Bradley v. State, 476 S.W.2d 499, 501 (Mo.1972); and North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Movant was aware of his aberrant behavior and the entire record implicitly discloses a desire on his part to legally atone for it so long as the death penalty could be avoided, while at the same time possessing self conceived hope for the imposition of light sentences. His charges of ineffective assistance of counsel in reality amount to nothing more than disappointment that his self conceived hope for the imposition of light sentences did not mature.

Movant's assertion of the ineffective assistance of counsel to the extent of completely debilitating his pleas of guilty from possessing the necessary attributes of being freely and voluntarily made, is, in plain

and simple terms, contradicted by the un-controverted record bespeaking the exact opposite as the truth.

The findings, conclusions and judgment of the trial court denying movant relief were not clearly erroneous and the judgment is affirmed.

All concur.